Paula A. Fleck P.C., WY State Bar
No. 6-2660
Bryson C. Smith, WY State Bar No. 7-6199
HOLLAND & HART LLP
645 South Cache Street, Suite 100
P.O. Box 68
Jackson, WY 83001-0068
Telephone: (307) 734-9741
Facsimile: (307) 739-9744
pfleck@hollandhart.com
bcsmith@hollandhart.com

Jeanifer E. Parsigian (*Pro Hac Vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1469
Fax: (415) 591-1000
jparsigian@winston.com

W. Gordon Dobie (*Pro Hac Vice*)
Emily N. Kath (*Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-5600
Fax: (312) 558-5700
wdobie@winston.com
ekath@winston.com

*Attorneys for Defendants*
*Nicholas Piazza, SP Capital Management,*
*LLC, Oleksandr Yaremenko, and TNA*
*Corporate Solutions, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Gramercy Distressed Opportunity Fund II, L.P., Gramercy Distressed Opportunity Fund III, L.P., Gramercy Distressed Opportunity Fund III-A, L.P., Gramercy Funds Management LLC, Gramercy EM Credit Total Return Fund, and Roehampton Partners LLC,<br>　　　　Plaintiffs,<br><br>vs.<br><br>Oleg Bakhmatyuk, Nicholas Piazza, SP Capital Management, LLC, Oleksandr Yaremenko, and TNA Corporate Solutions, LLC,<br>　　　　Defendants. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS NICHOLAS PIAZZA, SP CAPITAL MANAGEMENT LLC, OLEKSANDR YAREMENKO, AND TNA CORPORATE SOLUTIONS, LLC'S MOTION TO DISMISS**<br>Civil Action No. 0:21-cv-00223-NDF<br><br>Judge:  Hon. Nancy D. Freudenthal |

---

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS NICHOLAS PIAZZA, SP CAPITAL
## MANAGEMENT, LLC, OLEKSANDR YAREMENKO, AND TNA CORPORATE
## SOLUTIONS, LLC'S MOTION TO DISMISS

---

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    GRAMERCY REMAINS EQUITABLY ESTOPPED FROM AVOIDING
THE ARBITRATION CLAUSES IN THE TRUST DEEDS. ............................... 2

II.    THE "NO-ACTION" CLAUSE PRECLUDES THIS ACTION ........................... 5

III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE ULF AND AVG
ARE INDISPENSABLE PARTIES THAT CANNOT BE JOINED. ................... 8

IV.    THE CASE SHOULD BE DISMISSED UNDER THE DOCTRINE OF
FORUM NON CONVENIENS. ........................................................................... 9

V.    GRAMERCY HAS NOT STATED A RICO CLAIM. ...................................... 14

    A.    RICO does not reach the extraterritorial conduct alleged ........................ 14
    B.    Gramercy's RICO claims allege fraud in connection with the sale of
securities. ................................................................................................ 15
    C.    Gramercy has not alleged close-ended or open-ended continuity. ........... 16
    D.    Gramercy's speculative damages are not cognizable under RICO ........... 18
    E.    Plaintiffs' conclusory allegations do not satisfy Rule 9(b). ..................... 19

VI.    DEFENDANT YAREMENKO IS NOT SUBJECT TO PERSONAL
JURISDICTION IN WYOMING. ...................................................................... 19

CONCLUSION ................................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100 Mount Holly Bypass v. Axos Bank*,
2021 WL 3172024 (D. Utah July 27, 2021) ..........................................................17

*Albon Motors v Naza Motors and others*,
[2007] EWHC 9 (Ch) ............................................................................................10

*Allstate Life Ins. Co. v. Robert W. Baird & Co.*,
2011 WL 5024269 (D. Ariz. Oct. 21, 2011) ..........................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................19

*Banco Intercontinental, S.A. v. Alvarez Renta*,
2005 WL 8168717 (S.D. Fla. Aug. 23, 2005) ......................................................18

*Bascuñán v. Elsaca*,
927 F.3d 108 (2d Cir. 2019) .................................................................................14

*Birdwell v. Glanz*,
790 F. App'x 962 (10th Cir. 2020) .......................................................................19

*Bixler v. Foster*,
596 F.3d 751 (10th Cir. 2010) .........................................................6, 15, 16, 18

*Cayman Expl. Corp. v. United Gas Pipe Line Co.*,
873 F.2d 1357 (10th Cir. 1989) ..........................................................................19

*Celtig, LLC v. Patey*,
347 F. Supp. 3d 976 (D. Utah 2018) ....................................................................20

*CGC Holding Co. v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) .............................................................................6

*ClearOne Commc'ns, Inc. v. Bowers*,
643 F.3d 735 (10th Cir. 2011) .............................................................................20

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) ..........................................................................18

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
946 F.3d 1223 (10th Cir. 2020) ..........................................................................20

*Elektrim SA v. Vivendi Holdings 1 Corp*,
   [2008] EWCA Civ 1178 ...........................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)................................................................................3

*Gas Sensing Tech. Corp. v. Ashton*,
   2017 WL 2955353 (D. Wyo. June 12, 2017)..........................................12

*GE Energy, Mars, Inc. v. Szarzynski*,
   2021 WL 2809539 (D.D.C. July 6, 2021)..................................................3

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   140 S. Ct. 1637 (2020)..........................................................................2, 3

*Hopkins AG Supply LLC v. First Mountain Bancorp*,
   2014 WL 12770215 (W.D. Okla. July 1, 2014).......................................20

*Kusner v. First Penn. Corp.*,
   531 F.2d 1234 (3d Cir. 1976)...................................................................7

*Lawit v. Maney & Gordon, P.A.*,
   2014 WL 11512612 (D.N.M. Jan. 17, 2014)..............................................4

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
   449 F. App'x 704 (10th Cir. 2011) ...........................................................4

*Ltd. v. Patriarch Partners, LLC*
   286 F. Supp. 3d 634 (S.D.N.Y. 2017)......................................................15

*In re Colt Telecom Group plc*,
   [2002] EWHC 2815 (Ch).........................................................................7

*In re M&L Bus. Mach. Co.*,
   136 B.R. 271 (Bankr. D. Colo. 1992) ......................................................6

*In re Merrill Lynch P'Ships Litig.*,
   154 F.3d 56 (2d Cir. 1998).....................................................................18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006).................................................................................15

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010)...............................................................................14

*Motorola Credit Corp. v. Uzan*,
   322 F.3d 130 (2d Cir. 2003)...................................................................18

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39 (2d Cir. 2004).....................................................................................3

*Nuevos Destinos, LLC v. Peck*,
   2019 WL 6481441 (D.N.D. Dec. 2, 2019), *aff'd*, 999 F.3d 641 (8th Cir. 2021)....................14

*Outokumpu Stainless USA LLC v. Converteam SAS*,
   2017 WL 401951 (S.D. Ala. Jan. 30, 2017) ...............................................................3

*Pharmacy Providers of Okla. Inc. v. Q Pharmacy, Inc.*,
   2013 WL 1688921 (W.D. Okla. Apr. 18, 2013)...........................................................20

*Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*,
   321 F.R.D. 475 (D.P.R. 2017) .................................................................................8

*Regions Bank v. Blount Parrish & Co.*,
   2001 WL 726989 (N.D. Ill. June 27, 2001) ...............................................................7

*Resolution Trust Corp. v. Stone*,
   998 F.2d 1534 (10th Cir. 1993) ...............................................................16, 17, 18

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
   969 F.2d 953 (10th Cir. 1992) ................................................................................2

*Rusakiewicz v. Lowe*,
   556 F.3d 1095 (10th Cir. 2009) .............................................................................20

*SBMH Grp. DMCC v. Noadiam USA, LLC*,
   297 F. Supp. 3d 1321 (S.D. Fla. 2017) .....................................................................3

*Sensoria, LLC v. Kaweske*,
   2022 WL 204606 (D. Colo. Jan. 24, 2022)...............................................15, 16, 17, 18

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..............................................................................................12

*Sonterra Cap. Master Fund Ltd. v. Barclays Bank PLC*,
   366 F. Supp. 3d 516 (S.D.N.Y. 2018)......................................................................14

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
   277 F. Supp. 3d 521 (S.D.N.Y. 2017)......................................................................14

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) .............................................................................19

*The Angelic Grace*,
   [1995] 1 Lloyd's Rep 87 ......................................................................................10

*Town of Islip v. Datre,*
    245 F. Supp. 3d 397 (E.D.N.Y. 2017) ...................................................18

*U.S. Cellular Inv. Co. of Okla. City v. Sw. Bell Mobile Sys., Inc.,*
    124 F.3d 180 (10th Cir. 1997) .........................................................8

*Yavuz v. 61 MM, Ltd.,*
    576 F.3d 1166 (10th Cir. 2009) ..................................................11, 13

**Statutes**

18 U.S.C. § 1962 ......................................................................19

**Other Authorities**

Fed. R. Civ P. 9(b) ...................................................................19

Fed. R. Civ. P. 12 .....................................................................1

Fed. R. Civ. P. 19 ...................................................................8, 9

U.K. Civil Procedure Rules Part 6 ..................................................10

U.K. Civil Procedure Rules Part 6, Practice Diretion 6B ...........................10

## INTRODUCTION

Consistent with their approach in the complaint, Plaintiffs' Opposition Brief is filled with irrelevant and inflammatory innuendo.[1] But in the end, their response does little to undermine the Moving Defendants' articulation of the many legal defects requiring dismissal with the complaint.

To start, Plaintiffs remain stuck between a rock and a hard place regarding the Trust Deeds, able to neither embrace nor discard them because either position is fatal to their claims. Despite Plaintiffs' desperate insistence to the contrary, the Notes and Trust Deeds provide the entire basis for their claims here. The only reason they claim that the TNA transfers are improper is that the Trust Deed prohibits certain asset transfers without notice and approval of the Noteholders. The only damages they assert run from the impact on the Notes. Those claims are the linchpin of their entire complaint, their opposition brief, and their plea to remain in this Court. Yet, as a consequence, they are bound to the dispute resolution provisions therein requiring arbitration under English law in a London forum and the no-action clause that provides standing only to the Trustee. Further, the forum is inadequate and inconvenient and the claims leave out indispensable parties. The aforementioned provide four separate reasons to dismiss the complaint before even reaching the problems with inadequate pleading of the RICO claims.

As for their argument that Moving Defendants purportedly ignore the TNA transfers, the focus of the motion is on the many, purely legal deficiencies with the complaint because of the procedural posture of a Rule 12 motion where alleged facts must be accepted. While Gramercy's allegations about the transfers are false, Defendants do not ask the Court to adjudicate that question (and, indeed, the Court should not due to the defects in the complaint).

---

[1] Despite this approach, it is Gramercy and its Opportunity Funds that have been criticized by the United Nations for their overly aggressive approach to litigation throughout the world and acting as a "vulture fund." *See* Ex. 16, United Nations Conference Report (2016) at 6-7, 13 (Vulture funds, like Gramercy "are not true investors but entities purchasing distressed debt in the secondary markets with the sole purpose to litigate"). This case fits that pattern.

1

At bottom, Plaintiffs' opposition fails to undermine the legal challenges that require dismissal. As noted in our February 7, 2022 filing, the Noteholders need—and have a right under the Trust Deeds—to act in a unified manner and in the best interest of all to determine the path forward for these companies. Gramercy has no right and should not be allowed to jump the line. Since our filing, the war in Ukraine now threatens to destroy company assets. Adjudicating an alleged breach once in the United States and again in London wastes time and resources and risks confusion—at a time when AVG, ULF, and their stakeholders need stability most.

## ARGUMENT

## I.    GRAMERCY REMAINS EQUITABLY ESTOPPED FROM AVOIDING THE ARBITRATION CLAUSES IN THE TRUST DEEDS.

Plaintiffs dispute neither the validity of the arbitration agreements nor their scope. Further, they do not dispute that courts perform only a "very limited inquiry" in determining whether to refer an international dispute to arbitration. *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992). Instead, Plaintiffs argue, contrary to the Supreme Court in *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, that U.S. principles of equitable estoppel do not apply, and that, contrary to their 100-page complaint, their claims are not intertwined with their Notes or Trust Deeds. Opp. at 14–20. Both arguments are wrong.

First, Plaintiffs continue to demonstrate their artful pleading, arguing that the cases cited in the motion do not *discuss* if the underlying contract contained a choice-of-law provision. Opp. at 15. They are too clever by half. *GE Energy*, a directly on-point, unanimous Supreme Court decision, applied U.S. equitable estoppel law to allow a non-signatory defendant to enforce an arbitration agreement against a signatory plaintiff despite a choice-of-law provision selecting German law. 140 S. Ct. 1637, 1644–1645 (2020). As quoted in the lower court decision, the

Supply Agreements in that case provided that "arbitration shall take place in Dusseldorf, Germany, . . . and that the 'substantive law of Federal Republic of Germany shall apply.'" *Outokumpu Stainless USA LLC v. Converteam SAS*, No. CV 16-00378-KD-C, 2017 WL 401951, at *2 (S.D. Ala. Jan. 30, 2017). In light of this binding, recent Supreme Court authority, Plaintiffs' out-of-circuit, dated opinions are unpersuasive. *See* Opp. at 15.

Specifically, *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) and *SBMH Grp. DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321 (S.D. Fla. 2017) were decided prior to *GE Energy* and can be readily disregarded as superseded. Further, while decided after *GE Energy*, *Mars, Inc. v. Szarzynski* is readily distinguishable. CV 20-01344 (RJL), 2021 WL 2809539 (D.D.C. July 6, 2021). There, the court decided that the defendant could not invoke equitable estoppel principles to force a non-signatory *plaintiff* into arbitration. *Id.* at *6. Moreover, the court did not address *GE Energy* and, while it considered the proffered legal opinions about Belgian law, it ultimately looked to U.S. case law for principles of equitable estoppel in compelling arbitration. *Id.* at *8–9. The *Mars* court also did ultimately compel arbitration. *Id.* at *10. Finally, Plaintiffs' cited Supreme Court case, *First Options of Chicago, Inc. v. Kaplan*, was decided decades before *GE Energy* and is, in any event, off point. 514 U.S. 938 (1995). It is neither about equitable estoppel nor whether a non-signatory can compel or be compelled to arbitration, but about jurisdiction to decide the question of arbitrability. *Id.* at 944 (holding that that courts "should apply ordinary state-law principles that govern the formation of contracts" when deciding whether such an agreement exists but "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). In sum, Plaintiffs fail to

overcome *GE Energy*'s clear holding that U.S. estoppel rules govern the question of whether a non-signatory defendant can invoke an arbitration clause.[2, 3]

As to their second argument, while Plaintiffs try to "plead-around" the contract, even a cursory reading of the Complaint shows that Plaintiffs' claims are entirely dependent on AVG and ULF's ("the Company") obligations to Gramercy under the Trust Deeds.  This is precisely why Plaintiffs devote an entire section of their Complaint to describing the Company's obligations in the Trust Deeds regarding transfers of Company assets.  *See* Compl. ¶¶ 45–50; *see Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 710 (10th Cir. 2011) (A plaintiff's "actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is . . .  always the *sine qua non* of an appropriate situation for applying equitable estoppel.").  Plaintiffs persist that these are tort claims, but masking contract claims as tort claims is a tactic that is well-known and unavailing.  *See, e.g.*, *Lawit v. Maney & Gordon, P.A.*, No. 13-CV-0835 SMV/LFG, 2014 WL 11512612, at *4 n.2 (D.N.M. Jan. 17, 2014) ("[A] party cannot avoid arbitration by simply casting its complaint in tort instead of contract.") (collecting cases).

Plaintiffs further argue that their claim is that Defendants exploited the Company, not worked with them to engage in misconduct.  Opp. at 20.  This argument is belied by Plaintiffs' allegations that the Company effectuated transfers inconsistent with the Trust Deeds and that

---

[2] Plaintiffs misconstrue Moving Defendants' point regarding the following provision in the Trust Deeds: "A person who is not a party to these presents has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any terms of these presents, but this does not affect any right or remedy of a third party which exists or is available apart from that Act."  Mot., Ex. 5, AVG Trust Deed at 33, § 32; *see also id.*, Ex. 6, ULF Trust Deed, Terms and Conditions of the Notes at 90, § 18; Opp. at 16–17.  First, the clause is limited to restricting third-party beneficiary rights provided under that statute and does not address a signatory's obligations under the Trust Deeds.  Mot., Ex. 5, AVG Trust Deed at 33, § 32.  Second, Plaintiffs ignore the language stating that the clause "does not affect any right or remedy of a third party which exists or is available apart from the [CRTPA]."  *Id.*  Contrary to Plaintiffs' argument, the provision expressly preserves potential equitable estoppel arguments like the one raised here.

[3] However, even should English law apply, Plaintiffs' declaration of Ben Valentin fails to show that an English court would not apply equitable estoppel or other equitable powers of the English court under these particular facts.  *See* Opp., Ex. 1.  Valentin cites no cases stating that equitable estoppel, or other similar equitable powers of the English court, are unavailable under English law in this context.  *Id.* at ¶ 29(2)-(3) (citing only cases applying U.S. state law).

Company representatives made fraudulent representations to Plaintiffs. *See, e.g.*, Compl. ¶ 76 ("[C]hanges in the Company structure . . . caused ULF's 'direct control of its key assets [to be] dispersed between the group's other subsidiaries;'" but "***[n]one of these transfers were publicly disclosed by the Company*** . . . as required under both Trust Deeds.") (emphasis added).[4] Plaintiffs' contention is unsupported by the Complaint and common sense.

Further, Plaintiffs seek to bolster their RICO claims with the argument that certain Moving Defendants are, in fact, Noteholders. *See* Opp. at 12; Compl. ¶¶ 10, 93, 102, 109. Plaintiffs cannot have it both ways by affirmatively alleging that Defendants bought Notes as part of a scheme, while arguing that Moving Defendants cannot invoke the ULF and AVG Trust Deeds. If their allegations are accepted as true, SP Advisors has the same rights and obligations under the Trust Deeds as Gramercy regarding the arbitration provisions.

## II.    THE "NO-ACTION" CLAUSE PRECLUDES THIS ACTION.

Plaintiffs are also precluded from bringing these claims because the no-action clause in the Trust Deeds expressly requires individual Noteholders to act through an appointed trustee to enforce the terms of the Trust Deed. Mot. at 8–9. Plaintiffs affirmatively argue that SP Capital is in fact a Noteholder to try to fill out the supposedly extensive scheme. *See supra* § I. As a Noteholder, SP Capital shares the same rights and interest under the no-action clause in having the Trustee bring suits seeking to enforce the terms of the Trust Deeds, the Notes, or the Surety Agreements. SP Capital, like other Noteholders, has a right to a single, unified determination on the future of the Notes and can invoke the no-action clause to avoid another Noteholder pursuing

---

[4] *See also, e.g.*, Compl. ¶ 127 ("***[T]he Company failed to give notice*** to the Trustee of these affiliate transactions, as required under the Trust Deeds" and "***failed to follow the terms*** of the asset sale restrictions in the Trust Deeds."); *id.* ¶ 145 ("***[T]he Company did not disclose the change*** . . . despite being required to do so by the Trust Deeds."); *id.* ¶ 146 ("[T]he terms of the Trust Deeds ***require the Company to report*** material dispositions or restructurings promptly and to give notice of affiliate transactions over $5 million, but ***ULF never provided such a report*** about either the Maltofex or TNA Transfers") (emphases added to all).

a piece-meal and unfair resolution—the exact scenario the no-action clause is designed to avoid but that the claims in this lawsuit contemplate.[5]

Again, while Plaintiffs now seek to avoid the arbitration and no-action clause by pleading around ULF and AVG, the undisputable reality is that Plaintiffs' claims depend directly on the premise that AVG and ULF had an obligation, memorialized in the Trust Deeds, not to transfer assets without Noteholder approval. *See, e.g.*, Compl. ¶¶ 76, 127, 145, 146; *infra* § III. Plaintiffs assert that the **Company**, assisted by Moving Defendants, did not meet this obligation under the **terms of the Trust Deeds**.

The Trust Deeds vest the respective Trustee with sole authority to enforce rights arising under the Deeds and expressly prohibit Noteholders, such as Plaintiffs, from doing so on an individual basis. Mot. at 24; *id*., Ex. 6,[6] ULF Trust Deed at 6–7, § 2.5.[7] Here, Plaintiffs are asserting rights they have only by virtue of being Noteholders in ULF and AVG and allege no injury different from the injury that affects all Noteholders equally because of the loss of company assets. These are, by definition, derivative claims.[8] Further bolstering this argument, Gramercy is not even the legal holder of the Notes—Gramercy merely owns a beneficial ownership in the Notes. The Bank of New York Depository (Nominees) Limited has legal ownership over the AVG

---

[5] Even more, Plaintiffs themselves have no standing to bring this dispute in this court based on the no-action clause to which they are bound. It is irrelevant whether a third party can invoke the no-action clause.

[6] References to Mot., Exs. 1–11 are to the exhibits to the Declaration of Jeanifer Parsigian filed with the Motion to Dismiss. (Document 44-1). Additional exhibits (Exs. 12–17) are attached to the concurrently filed Declaration of Jeanifer E. Parsigian in Support of Defendants' Reply Memorandum in Support of the Motion to Dismiss.

[7] *See also* Mot., Ex. 5, AVG Trust Deed at 14, § 8.3.

[8] Just like in *Bixler v. Foster*, Plaintiffs' claim fails to fall into the exception of a direct, personal interest because Plaintiffs, at bottom, assert that they "suffered a diminution in value of their corporate shares," nothing more. 596 F.3d 751, 757 (10th Cir. 2010). Plaintiffs' other cited cases are irrelevant or factually distinguishable. *See CGC Holding Co. v. Broad & Cassel,* 773 F.3d 1076, 1099 (10th Cir. 2014) (no derivative action possible because Plaintiffs were real estate borrowers suing a group of lenders); *In re M&L Bus. Mach. Co.*, 136 B.R. 271, 276 (Bankr. D. Colo. 1992) ("Plaintiffs' claims are based upon particular and distinct injuries to each of them which must be proven individually for the collection of damages.").

Notes.  *See* Ex. 17, AVG Global Certificate, at 1.[9]  Plaintiffs' recourse was to request in writing that the Trustee institute proceedings; Plaintiffs have failed to do so.

Plaintiffs' cases all apply U.S. law for the premise that no-action clauses may not extend to suits where a plaintiff does not seek to enforce contract claims.  Opp. at 23.  But that is not that case here.[10]  For example, in *Allstate Life Insurance Co. v. Robert W. Baird & Co.*, the court found that "[b]ecause [p]laintiffs' fraud and negligent representation claims arise out of [p]laintiffs' purchase of the [b]onds and ***not out of [p]laintiffs' status as bondholders*** or the Indenture itself, [p]laintiffs have not exclusively assigned these claims to Trustee."  No. CV-09-8162-PCT-GMS, 2011 WL 5024269, at *3 (D. Ariz. Oct. 21, 2011) (emphasis added).[11]

Plaintiffs are clearly attempting to get around the no-action clause by disguising their claims as anything other than what they truly are—contractual claims directly involving the Company's obligations memorialized in the Trust Deeds.  *See, e.g.*, Mot., Ex. 10, *Elektrim SA v. Vivendi Holdings 1 Corp*, [2008] EWCA Civ 1178, ¶¶ 104–105 (finding no-action clause barred suit where, although the cause of action was "framed as a claim in the tort of 'fraud' . . . the object of the claim [wa]s to compensate [bondholder] for the loss of a contractual right or entitlement under the bond conditions which it had by virtue of being a bondholder"); *Id.*, Ex. 11, *In re Colt Telecom Group plc*, [2002] EWHC 2815 (Ch), ¶¶ 56–61 (finding claim for administration was a "remedy with respect to [the] [i]ndenture or the [n]otes" and, therefore, barred by the no-action clause); Compl. ¶ 181 (alleging Defendants "sabotaged Gramercy's ***legal and economic rights*** as one of the largest creditors of the Company by . . . ***rendering Gramercy's contractual right . . .***

---

[9] For ULF, the Notes are held by Deutsche Bank AG and Cede & Co.  Mot., Ex. 6A, ULF Trust Deed at 33, 41.

[10] It is of note that Plaintiffs have neither responded to Moving Defendants English law cases or cited any of their own.  Opp. at 23; Mot. at 24–25.

[11] Plaintiffs' other cases are also inapposite.  *See Kusner v. First Penn. Corp.*, 531 F.2d 1234, 1239 (3d Cir. 1976) (allowing a very specific, ***direct*** 10(b)-5 action based on purchases and sales of shares in connection with a fraud in contravention of federal securities laws); *Regions Bank v. Blount Parrish & Co.*, No. 01 C 0031, 2001 WL 726989, at *7 (N.D. Ill. June 27, 2001) (same).

*ineffectual or worthless*") (emphases added).  Plaintiffs cannot choose to ignore the bargained-for procedures to skip the line to get ahead of other Noteholders.

## III.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE ULF AND AVG ARE INDISPENSABLE PARTIES THAT CANNOT BE JOINED.

Plaintiffs claim to have alleged a "years long, multi-faceted" RICO conspiracy relating to AVG and ULF Notes.  Opp. at 2.  Plaintiffs cannot avoid the need to have AVG and ULF as parties when their entire action is grounded in allegations that AVG and ULF breached the Trust Deeds.  *See supra* § I.  Contrary to Plaintiffs' assertion, these allegations are not limited to the tortious interference claim.  *See* Opp. at 24–25.  Rather, a ruling in Gramercy's favor on *any* of its claims will require a finding that AVG and ULF transferred assets in breach of the Trust Deeds.  *See* Mot. at 16–17; *see also, e.g.*, *Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, 321 F.R.D. 475, 480 (D.P.R. 2017) (finding third-party hospital had an interest in litigation under Rule 19 where "[a]ll … claims, including the RICO violation, stem[med] from the [] Contract into which [plaintiff] entered with [hospital]" and the "complaint hinge[d] on a multitude of alleged contractual violations committed" by the hospital).

Such a ruling would impair ULF's and AVG's interests.[12]  As a practical matter, proceeding here on a potential breach of the Trust Deeds prejudices AVG, ULF, and *all* Noteholders because it risks Plaintiffs obtaining a judgment ahead of the senior debt they admit exists and favoring them ahead of the other Noteholders.  Further, this action will not prevent a subsequent arbitration of those same claims where Gramercy—as Noteholder—could seek to recover again on its interest in the Company Notes.  *See, e.g.*, *id*. (finding non-party hospital was

---

[12] Plaintiffs argue that ULF's and AVG's interests would not be impaired because the companies "share Gramercy's interest in blaming Defendants for [their] contractual shortcomings," Opp. at 25.  But this is an acknowledgment that their own claims are merely derivative of the companies' claims, making those companies indispensable under governing law.  *See U.S. Cellular Inv. Co. of Oklahoma City v. Sw. Bell Mobile Sys., Inc.,* 124 F.3d 180, 183 (10th Cir. 1997) ("[T]he Supreme Court has held that a corporation … is an indispensable party to a derivative suit.") (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 520-523 (1947).

indispensable to RICO action where ruling on alleged contractual violations by hospital "could potentially prejudice [hospital] in future litigation," even if not legally binding).

Critically, Plaintiffs fail to appreciate that regardless of this Court's ruling, Gramercy will continue to hold the Company's Notes. Therefore, this Court could not "accord complete relief" between Plaintiffs and Defendants because (under Plaintiffs' own theory, *see* Opp. at 25), AVG and ULF maintain a claim against Defendants to recover the same damages (alleged lost value of Company assets) on behalf of all Company Stakeholders, including Plaintiffs. Fed. R. Civ. P. 19(a)(1)(A). Moreover, proceeding without AVG and ULF creates "a substantial risk of [Defendants] incurring double, multiple, or otherwise inconsistent obligations" because any arbitration of the restructuring dispute could result in an award affecting the validity of the transfers at issue here and, therefore, Defendants' interest in the underlying assets. *Id.* at 19(a)(1)(B)(ii). The Company's absence implicates the key concerns of Rule 19 and requires dismissal.

## IV.   THE CASE SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS.

The Court should exercise its discretion under the doctrine of forum non conveniens to dismiss this case concerning foreign parties, foreign conduct, and foreign law—with no meaningful ties to Wyoming or the United States. The practical obstacles of adjudicating this dispute overwhelmingly counsel for dismissal.

### A.   The London Court of International Arbitration or an English court provide an adequate alternative forum.

Plaintiffs do not (and cannot) dispute the adequacy of the London Court of International Arbitration ("LCIA"). *See* Opp. at 27–33. Instead, Plaintiffs' sole argument is that the LCIA is not an "available" forum here because Moving Defendants have not affirmatively consented to jurisdiction generally in England. *Id.* at 30. Plaintiffs' argument is both wrong and misleading.

The Trust Deeds provide for arbitration in a London forum and further give the Trustee (and in some circumstances a Noteholder) the option to bring a dispute in an English court, to which they grant *exclusive jurisdiction*. *See* Opp., Ex. 1, Valentin Decl. ¶ 16 (citing AVG Trust Deed at 32, § 29; ULF Trust Deed at 29, § 23.2). Further, English jurisdiction rules are far-reaching including where a claim "is made in respect of" a contract "that is governed by English law" or "a breach of contract committed within the jurisdiction," or where the alleged damages result from a tort "committed … within the jurisdiction." *See* Ex. 12, Civil Procedure Rule 6.36; Ex. 13, Practice Direction 6B.3.1(6)(c), (7)(a), (9)(b). Moreover, the phrase "is made in respect of . . . does not require that the claim arises under a contract: it requires only that the claim relates to or is connected with the contract." *See* Ex. 14, *Albon Motors v Naza Motors and others* [2007] EWHC 9 (Ch), ¶ 27. Given this, Plaintiffs' English law declaration is notable in making no mention of England's broad jurisdictional reach. *See* Opp., Ex. 1. In contrast, Plaintiffs have not established jurisdiction over Defendant Yaremenko or over Defendant Bakhmatyuk.

### B.    Foreign law governs this dispute.

Despite Plaintiffs' bald assertions, under English law, the Trust Deed dispute resolution language covers Plaintiffs' fraud, tort, conspiracy, and aiding and abetting claims based on AVG and ULF's alleged breaches of the Trust Deeds.[13] *See, e.g.*, Ex. 15, *The Angelic Grace* [1995] 1 Lloyd's Rep 87, p. 91, cols. 1 and 2 (finding under English law that tort claims "arose out of the contract, since the same facts founded the [] claim in tort as founded the claims [] in contract").

Even if Plaintiffs' claims were somehow not governed by the Trust Deeds, foreign law— not U.S. law—would still apply under Wyoming choice-of-law analysis, which both parties agree

---

[13] The Trust Deeds state that disputes "*arising out of or in connection with* [the Notes, Trust Deeds, or Surety Agreement] are governed by and, and will be construed in accordance with, English law." *See* Mot., Ex. 5, AVG Trust Deed at 32, § 20.1 (emphasis added); *see also id.*, Ex. 6, ULF Trust Deed 29, § 23.1 (same). Plaintiffs' proffered opinion on English law makes no mention of the broad reach of the choice-of-law provision under English law.

applies to the law of the place with the most significant relationship to the claim. Opp. at 29. But, their own Complaint shows either England or Ukraine has the most significant relationship with the alleged misconduct, not Wyoming, and not Connecticut.[14] The Notes were issued on the Irish and London Stock Exchanges, all negotiations regarding a potential restructuring occurred in London or Ukraine, and all alleged misrepresentations occurred in London. *See* Mot., Ex. 1A at 6; *id.*, Ex. 1 at 2; Compl. ¶¶ 70, 85, 91, 116, 119, 129, 130, 158, 171, 180; *see also, e.g.*, *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1179 (10th Cir. 2009) (finding that, to the extent the choice-of-law provision did not govern the fraud and tort claims, Swiss law applied because the "entirety of [plaintiff's] monetary investment … and bulk of the parties' interactions (including the allegedly fraudulent and misleading conduct by the defendants) occurred outside the United States" and "[s]ubsequent communications, while occasionally emanating from the United States, related to the parties' performance under the [underlying agreement] and occurred outside the United States as well") (applying most-significant relationship test under Oklahoma law).

As for the Wyoming connections, Plaintiffs misstate the allegations of their own Complaint and misleadingly suggest that "over $870 million in Company assets and at least one hundred ULF subsidiaries" are now in Wyoming, and that Wyoming's laws facilitated the "shelter[ing of] foreign assets" through "sham" and "dummy" companies. Opp. at 12–13; Compl. ¶¶ 34, 139–140. But Plaintiffs' actual "information and belief" allegation is that *Wyoming companies* acquired Ukrainian egg-shell and crop production companies whose value consists of land, factories, equipment, inventory, and other physical assets that are all located in Ukraine. Compl. ¶¶ 125, 138, 140. But none of these assets are, or ever have been, located in Wyoming, nor can Plaintiffs

---

[14] Connecticut is mentioned in the Complaint only as the location of Gramercy's offices, *see* Compl. ¶¶ 13–15, 91, 178, 180, and the location of a single meeting between a Gramercy representative and a third party. *See id.* ¶ 114. Neither the Complaint nor the Opposition articulate any connections to Connecticut relevant to the claims alleged, or any basis to apply its law.

who falsely rely on "information and belief" seriously allege it.  Nor do they allege that even one dollar has gone from those companies to Wyoming.

### C.      Private and public interests weigh heavily in favor of dismissal.

Defendants rely on technicalities—place of formation, location of registered agent, or principal place of business—for what is, at its core, a practical inquiry.  *See Gas Sensing Tech. Corp. v. Ashton*, No. 16-CV-272-F, 2017 WL 2955353, at *15 (D. Wyo. June 12, 2017) ("The purpose of forum non conveniens 'is to ensure that the trial is convenient.'") (quoting *Yavuz*, 576 F.3d at 1172); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) ("Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'") (citation omitted).  The reality is that the key evidence, witnesses and documents in this case are located outside the United States. Yaremenko is a resident of Kyiv, and both SP Capital and SP Advisors have offices in Ukraine. Key third parties—ULF, AVG, Concorde, Petrashko, Ashmore, other European creditors, the Sureties, the Trustees, etc.—are in London, Ukraine, or elsewhere in Europe.  Compl. ¶¶ 21–24, 66; Mot. at 32 (citing Exs. 1-2, 5-6).  All of the assets in dispute are located in Ukraine.  Plaintiffs themselves hold their interest in the Company indirectly through banks located in London, who will be directly affected by any ruling on the issues in this case.  *See supra* § II.  There is no question that arbitration in London would be more efficient and practical for all parties involved.

As noted in the opening brief, almost every single paragraph of the Complaint raises allegations concerning events in a location outside of Wyoming—with most in London or the Ukraine.  *See* Mot. at 31–32.  In contrast, Defendants attempt to rely on SP Capital's place of formation, location of registered agent, or principal place of business—but ignore that the crux of

what they allege relates to the Piazza Defendants and Bakhmatyuk taking actions outside of Wyoming.  Opp. at 31.  That it has taken Plaintiffs more than three months to serve Defendant Bakhmatyuk not only demonstrates a lack of ties to Wyoming, but also that all convenience factors argue for a forum like London for this Defendant and third parties that are all in Europe and may not even be within this Court's subpoena power.[15]

Public interest factors weigh unquestionably in favor of dismissal—now, even more than when the Complaint was first filed.  At the end of the day, Plaintiffs ask this Court to examine claims about the finances and representations of AVG and ULF under English law.   All AVG and ULF assets, including all the subsidiaries Plaintiffs claim were transferred, are located in Ukraine.  There is no question that ULF, AVG, the Sureties, and other Noteholders are subject to jurisdiction in London for proper claims over the Notes, and witnesses and other evidence more conveniently obtained and/or subject to process.[16]  In contrast, Plaintiffs' claims here will subject these entities to extensive third-party discovery costs (if they can even be reached), diverting much-needed resources to this costly litigation while dealing with  the impact of a devasting war.

The Noteholders have a right under the Trust Deeds to act in a unified manner and in the best interest of all to determine the path forward for these companies.  Gramercy should not be allowed to jump the line with litigation having almost no connection to Wyoming.  Adjudicating the breach once here and again in London wastes resources and risks confusion—at a time when AVG, ULF, and their stakeholders need stability most.

---

[15] Plaintiffs also argue that London is not an available forum because Moving Defendants do not say whether Defendant Oleg Bakhmatyuk will consent to jurisdiction in England.  Opp. at 30.  Moving Defendants fail to see how any such representation could have any effect on whether he is in fact subject to jurisdiction in England, much less why Defendant Bakhmatyuk's amenability to service is critical to the forum non conveniens inquiry when he has yet to be served.  We also cover the broad ground for jurisdiction under English law, *supra* § IV.A.  *See Yavuz*, 576 F.3d at 1175 (plaintiff's argument that defendants were not amenable to service failed where defendants had not yet been served and plaintiff failed to "present any arguments that compel[led] [the court] to view their amenability to process was critical to the *forum non conveniens* determination").

[16] *See supra* § IV.A.

## V.     GRAMERCY HAS NOT STATED A RICO CLAIM.

### A.     RICO does not reach the extraterritorial conduct alleged.

Plaintiffs do not argue that any of the predicate statutes apply extraterritorially.  Opp. at 33–35.  Instead, Plaintiffs cling to paltry allegations of domestic conduct to defend their RICO claims.  *Id.*  But, with the alleged scheme's "foreign focus," Plaintiffs allegations concerning ownership transfers of companies located in Ukraine, with physical assets located in Ukraine, *see supra* § IV.B, "cannot support a claim of domestic application."  *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 580 (S.D.N.Y. 2017) (quoting *Petroleos Mexicanos v. SK Eng'g & Const. Co.*, 572 F. App'x 60, 61 (2d Cir. 2014)); *see also, e.g.*, *Sonterra Cap. Master Fund Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 556–57 (S.D.N.Y. 2018) (plaintiffs had not alleged a domestic application of wire fraud even though defendants had transmitted information to the U.S., had locations in the U.S., and engaged in transactions from within the U.S. because "the scheme was principally foreign in nature").  "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010) (emphasis in original).

Plaintiffs' allegations of wires and mail into the United States are "merely incidental," not a "core component of the scheme," which is insufficient under their own cases.  *Bascuñán v. Elsaca,* 927 F.3d 108, 122 (2d Cir. 2019) (cited at Opp. at 34–35).  Plaintiffs abandon all credibility when they point to their receipt of two Concorde Capital investment reports in Connecticut as supporting domestic application here.  Opp. at 35.  That alleged conduct can only be described as "incidental" to the purported vast scheme to retain control of two Ukrainian businesses, via communications concerning Notes issued abroad and governed by contracts applying foreign law.  Compl. ¶¶ 1, 3, 21–22, 45–49, 178, 180; *cf. Nuevos Destinos, LLC v. Peck*, No. 19-cv-00045, 2019

WL 6481441, at *21 (D.N.D. Dec. 2, 2019), *aff'd*, 999 F.3d 641 (8th Cir. 2021) (finding no domestic application of the wire and mail fraud statutes where the "United States was the end point for the predicate acts," but defendants "hatched any alleged scheme" in Peru).

### B.   Gramercy's RICO claims allege fraud in connection with the sale of securities.

On the PSLRA, Plaintiffs also get it wrong.  First, they argue a narrow standard, ignoring that under the Supreme Court's broad interpretation of "in connection with a purchase or sale of securities . . . it is enough that the fraud alleged coincide with a securities transaction—whether by the plaintiff or by someone else." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (internal quotation marks omitted).  "Put differently, if the alleged conduct could form the basis of a securities fraud claim against any party—[] the plaintiff, defendants *or a non-party*—it may not be fashioned as a civil RICO claim." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 643–44 (S.D.N.Y. 2017) (emphasis added).

Second, Plaintiffs fail to distinguish governing case law.  Plaintiffs' reliance on *Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010) to support their narrow interpretation of the PSLRA as barring only claims "directly" involving the purchase of securities is wrong and misrepresents Tenth Circuit law.  Opp. at 36–37; *Bixler*, 596 F.3d at 755 (alleging defendant-directors of METCO "conspired to deprive [plaintiffs] of the value of their METCO shares" by transferring METCO's mining claims to defendant UKL, which did not compensate METCO as promised).  Like *Bixler*, Plaintiffs have alleged fraud based on a scheme that purportedly "defrauded" Plaintiffs of their securities and "rendered their … investment[s] virtually worthless." *Id.*; *see also Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 2022 WL 204606, at *19 (D. Colo. Jan. 24, 2022) (PSLRA barred RICO claim where it was "difficult to separate [d]efendants' alleged actions regarding the sale of [company] stock from their alleged actions that harmed the value of the business.").

In arguing that the Court should ignore the Notes that Gramercy acquired after the purported scheme began, Plaintiffs attempt the very "surgical presentation of the cause of action" that *Bixler* warned "would undermine the purpose of the [PSLRA]." *Id.* at 760 (quotation omitted); *see* Opp. at 36. Gramercy's (1) continued purchase of ULF/AVG Notes after the purported scheme began and (2) allegations of predicate acts based on Defendants' offers to purchase Gramercy's Notes and purchases of other creditors' Notes are both relevant to the PSLRA analysis and controlling.[17] The "interrelatedness [of securities fraud allegations with claim] and PSLRA bar's broad scope doom Plaintiffs' RICO claims." *Sensoria*, 2022 WL 204606, at *19.[18]

### C.   Gramercy has not alleged close-ended or open-ended continuity.

Gramercy has not alleged predicate acts that amount to a threat of continuing racketeering activity, either close- or open-ended. An alleged RICO claim does not have close-ended continuity if it "remain[s] a *single* overarching scheme . . . to accomplish a discrete goal . . . directed at a finite group of individuals . . . with no potential to extend to other persons or entities." *Id.* at *20 (emphasis in original) (citing *Boone v. Carlsbad Bancorp., Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992)). Even assuming Plaintiffs could overcome this "single overarching scheme" limitation, Plaintiffs do not plead duration and extensiveness under *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). First, Plaintiffs' allegations related to the purportedly fraudulent transfers occurred from February 2019 to March 2019 and from November 2019 to May 2020—

---

[17] *See* Compl. ¶ 72 (alleged scheme began by August 11, 2016), ¶¶ 46, 48 (Gramercy purchased AVG and ULF Notes between 2011 and 2017), ¶¶ 47, 49 (Gramercy's percentage holding of AVG and ULF Notes increased from 2016 to 2017); *id.* ¶ 200 (purchases from other Noteholders "served the Count 1 Enterprise's mission by marginalizing and isolating Gramercy through the substitution of independent creditors . . . with Bakhmatyuk loyalists and surrogates"), ¶¶ 178(2, 4, 6, 8), 180(2, 3), 202(2) (allegations surrounding the purchase/sale of securities).

[18] Plaintiffs' claim that any allegations of fraud in connection with other creditors' Notes are not barred by the PSLRA because "Gramercy has not alleged that any other creditors bought or sold their debt positions in reliance on the misrepresentations or omissions directed at Gramercy." Opp. at 37 n.17. This argument ignores the allegations throughout the Complaint that Defendants enacted their scheme by spreading misinformation through the media and published reports available to other investors. *See* Compl. ¶¶ 10, 71, 81, 108.

not a period of "at least five years."  Opp. at 41; *see* Compl. ¶¶ 123–124, 138–139.  Second, Plaintiffs fail to show extensiveness, having alleged only one source of damages—inability to recover on the Notes, fail to plead plausible allegations against many of the purported conspirators, and acknowledge Gramercy is the "sole target" and victim of the alleged scheme.[19, 20]  *See* Compl. ¶¶ 181–184; Mot. at 43–47; Opp. at 41–42.  Finally, the nature of the scheme counts against Plaintiffs, for "[w]here the scheme has a limited purpose, most courts have found no continuity." *Resolution Trust*, 998 F.3d at 1545.  Finally, Gramercy has alleged "a scheme that was not only closed-ended temporally but also in purpose."  *Sensoria*, 2022 WL 204606, at *20.

Gramercy has also failed to allege open-ended continuity, as there is no future threat of repetition of the scheme alleged—transferring assets out of UVG and ALF.  *See Resolution Trust*, 998 F.3d at 1543.  Plaintiffs attempt to distract from this failing with allegations that are "conclusory in nature [and] immaterial to [Plaintiffs'] grievance."  *Sensoria*, 2022 WL 204606, at *21; *see* Opp. at 39–40.  But, Gramercy alleges that the transfers emptied ULF and AVG of their assets—raising the question how such harm could conceivably reoccur.  *See* Compl. ¶ 143 ("at least two-thirds of ULF's assets" were transferred); Opp. 13 (the AVG transfer "effectively dissipat[ed] all of AVG").  There is thus "no indication that the scheme concerning [ULF and AVG] will affect any others."  *Sensoria*, 2022 WL 204606, at *21.

Finally, Gramercy argues that continuity is a question of fact and it is for the court to determine if "there is sufficient evidence to support the jury's finding."  Opp. at 42 (quoting

---

[19] Gramercy argues that there is no "single-victim" rule.  Opp. at 42 (citing *100 Mount Holly Bypass v. Axos Bank*, No. 20-cv-856-TS-CMR, 2021 WL 3172024, at *12 (D. Utah July 27, 2021)).  But, in finding plaintiffs alleged continuity, the court in *100 Mount Holly Bypass* expressly relied on the fact that it was "not a case that alleges a single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities."  *Id.*  (internal quotation marks omitted).  And *Resolution Trust* is clear that the number of victims should be considered, and a scheme "directed at one individual with no potential to extend to other persons or entities" does not establish continuity.  998 F.2d at 1544 (quotation omitted).

[20] Plaintiffs cannot both argue harm to other competitors and that the Court should ignore "ancillary allegations of fraud in connection with purchases or sales of other creditors' notes."  Opp. at 37 n.17.

*Resolution Trust*, 998 F.2d at 1543–45).  But the court in *Resolution Trust* was reviewing a jury verdict, and thus "sufficient evidence" was the applicable standard of review.  Courts in the Tenth Circuit can and do dismiss RICO claims, like Gramercy's, that as a matter of law cannot establish continuity.  *See, e.g.*, *Bixler*, 596 F.3d at 761; *Sensoria*, 2022 WL 204606, at *21.

     **D.**       **Gramercy's speculative damages are not cognizable under RICO.**

As their own citations confirm, Plaintiffs must seek to recover their debt under the Trust Deeds before they have cognizable RICO damages.  *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135–137 (2d Cir. 2003) (cited at Opp. at 15) (dismissing RICO claims for lack of standing because damages sought by creditor were not "clear and definite" until legal remedies against borrower had been exhausted).  Plaintiffs' attempt to distinguish case law cited by Defendants is unpersuasive, for the holdings in these cases are fatal to their claims.  *See, e.g.*, *In re Merrill Lynch P'Ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) ("RICO injury is speculative when contractual or other legal remedies remain which hold out a real possibility that [plaintiff's] debt . . . may be eliminated or significantly reduced.").  Plaintiffs' authority does not hold to the contrary.  *See, e.g.*, *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 410 (E.D.N.Y. 2017) ("That a creditor *must . . . attempt to collect on a debt prior to bringing a RICO claim* does not imply that all other plaintiffs, including those not collecting on a debt, must pursue non-RICO claims first.") (emphasis added); *Banco Intercontinental, S.A. v. Alvarez Renta*, No. 04-20727-CIV, 2005 WL 8168717, at *3 (S.D. Fla. Aug. 23, 2005) (clarifying that purpose of requirement that creditor show "his contractual rights to payment had been frustrated" before pursuing RICO claim was to determine whether those contractual remedies could satisfy his claims); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1260 (10th Cir. 2003) (finding defendants' argument that RICO damages were not ripe "*might be correct* if Plaintiff's only alleged injury were prejudice to his ability to collect damages

for breach of contract" and holding "some alleged damages *may be too speculative to recover before the contract claim is resolved*") (emphasis added) (citing *Motorola*, 322 F.d3d at 135–37).

### E.    Plaintiffs' conclusory allegations do not satisfy Rule 9(b).

Plaintiffs' allegations about the involvement of each Defendant are merely conclusory and do not plausibly allege any of the Defendants committed RICO predicate acts.[21]  *See Cayman Expl. Corp. v. United Gas Pipe Line Co*., 873 F.2d 1357, 1362 (10th Cir. 1989).  Plaintiffs fail to plead any non-conclusory allegations concerning Piazza, citing only two communications with him.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Opp. at 46–47; Compl. ¶¶ 112, 154, 178, 208.  Plaintiffs' allegations regarding SP Capital and TNA are similarly deficient.  The Complaint does not allege TNA was an active participant in the alleged scheme.  The allegations concerning SP Capital—that it was involved in the formation of TNA and that "upon information belief" Beaufort (purchaser of Ashmore's Notes) was partially owned by S. Pierce Advisors, which was partially owned by other companies under SP Capital—are insufficient and conclusory.  Compl. ¶ 102; *see* Opp. at 47.  Finally, the only alleged connection between Yaremenko and the purported scheme is that Yaremenko has signed the TNA annual reports and served as an advisor to SP Capital.  Opp. at 46; *see, e.g.*, Compl. ¶¶ 18, 221.  The Complaint is plainly inadequate.[22]

## VI.    DEFENDANT YAREMENKO IS NOT SUBJECT TO PERSONAL JURISDICTION IN WYOMING.

Plaintiffs' conclusory allegations of Yaremenko's involvement in the "conspiracy" do not

---

[21] Plaintiffs cannot rely on their RICO conspiracy claim to save the Complaint from its pleading deficiencies.  "By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)."  *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006).  Because Plaintiffs' have not adequately alleged a RICO claim under § 1962(c), they have not stated a claim under § 1962(d).

[22] Plaintiffs asks the Court to exercise supplemental jurisdiction over the state law claims if the RICO claims are dismissed, citing resources expended by Plaintiffs serving Bakhmatyuk and stating there are no unsettled questions of state law.  Opp. at 48.  Plaintiffs have inflicted these expenses upon themselves by bringing this case in the United States instead of through arbitration in London.  In deciding on supplemental jurisdiction, "federal courts consider comity, convenience, economy, and fairness."  *Birdwell v. Glanz*, 790 F. App'x 962, 964 (10th Cir. 2020).  None of the factors weighs in favor of supplemental jurisdiction over causes of action here.

rise to the level of purposeful direction in Wyoming. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228–29 (10th Cir. 2020); Mot. at 48-49. In fact, Plaintiffs have not even alleged that Yaremenko has ever had contact with Bakhmatyuk **or** Plaintiffs, or how Yaremenko was involved with purchases of the Notes, let alone connected his purported conduct to Wyoming. Plaintiffs' repeated citations to the facts that Yaremenko signs the annual TNA statements or is employed in Ukraine by a Wyoming LLC are not sufficient to create personal jurisdiction, especially because they are unrelated to Plaintiffs' claims. Opp. at 38; *see, e.g., Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 983–84 (D. Utah 2018) (court cannot exercise jurisdiction over an agent based on the company's wrongful act). Plaintiffs cite no law suggesting that merely by being an officer or employee of a corporation one is subject to personal jurisdiction in the state of incorporation.[23] Plaintiffs' own cases state the opposite. *See, e.g.*, *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009) ("The liability of [] defendants [] is not predicated on their status as corporate officers . . . These are contacts in [the forum state] by the defendants themselves, not . . . the corporation.").

At bottom, Yaremenko is a Ukrainian citizen, residing and working in Ukraine for Ukrainian clients. In fact, Yaremenko is currently in Ukraine and in sporadic contact because of the war, further underscoring the abject unfairness of exercising jurisdiction over this foreign Defendant and the inappropriateness of jurisdictional discovery in this circumstance.

## CONCLUSION

The Complaint should be stayed or dismissed pending arbitration.

---

[23] Plaintiffs' cited cases are inapposite. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011) (wrongful activity, injury in forum state); *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101-03 (10th Cir. 2009) (defendants had previously initiated a lawsuit in the forum state); *Pharmacy Providers of Oklahoma, Inc. v. Q Pharmacy, Inc.*, No. CIV-12-1405-C, 2013 WL 1688921, at *3-5 (W.D. Okla. Apr. 18, 2013) (defendants pursued business relationship with forum state plaintiff and caused injury in forum state); *Hopkins AG Supply LLC v. First Mountain Bancorp*, No. CIV-12-1141-C, 2014 WL 12770215, at *2 (W.D. Okla. July 1, 2014) (defendant aimed scheme at forum state plaintiff's place of business and caused injury in forum state).

Dated:  March 30, 2022

Respectfully submitted,

Nicholas Piazza, SP Capital Management, LLC, Oleksandr Yaremenko, and TNA Corporate Solutions, LLC

BY:   /s/ Paula A. Fleck

Paula A. Fleck, P.C., WY State Bar No. 6-2660
Bryson C. Smith, WY State Bar No. 7-6199
HOLLAND & HART LLP
645 South Cache Street, Suite 100
P. O. Box 68
Jackson, WY 83001-0068
Telephone: (307) 734-9741
Facsimile: (307) 739-9744
pfleck@hollandhart.com
bcsmith@hollandhart.com

*Attorneys for Defendants Nicholas Piazza, SP Capital Management, LLC, Oleksandr Yaremenko, and TNA Corporate Solutions, LLC*

W. Gordon Dobie *(Pro Hac Vice)*
Emily N. Kath *(Pro Hac Vice)*
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-5600
Fax: (312) 558-5700
wdobie@winston.com
ekath@winston.com

Jeanifer E. Parsigian (*Pro Hac Vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Tel: (415) 591-1469
Fax: (415) 591-1000
jparsigian@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of March, 2022, I electronically transmitted the

foregoing document to the Clerk of Court of the U.S. District Court, District of Wyoming, using

the CM/ECF system for filing.  Based on the records currently on file the Clerk of Court will

transmit a Notice of Electronic Filing to all registered counsel of record.

Robert C. Jarosh
Billie L.M. Addleman
Erin E. Berry
Hirst Applegate, LLP
P.O. Box 1083
Cheyenne, WY  82003-1083
(307) 632-0541
rjarosh@hirstapplegate.com

Ryan M. Philp
Alan M. Mendelsohn
Daniel J. Petrokas
Maura C. Allen
Hogan Lovells US LLP
390 Madison Avenue
New York, New York  10017
(212) 918-3000
ryan.philp@hoganlovells.com

Mark D. Gibson
Hogan Lovells US LP
1601 Wewatta Street, Suite 900
Denver, CO  80202
(303) 899-7300
mark.gibson@hoganlovells.com


/s/ Paula A. Fleck, P.C.