IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**FILED**

1:58 pm, 8/26/24

**Margaret Botkins**
**Clerk of Court**

| | |
|---|---|
| Gramercy Distressed Opportunity Fund II, L.P., Gramercy Distressed Opportunity Fund III, L.P., Gramercy Distressed Opportunity Fund III-A, L.P., Gramercy Funds Management, LLC, Gramercy EM Credit Total Return Fund, and Roehampton Partners LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>Oleg Bakhmatyuk, Nicholas Piazza, SP Capital Management, LLC, Oleksandr Yaramenko, and TNA Corporate Solutions, LLC,<br><br>Defendants. | Case No. 2:21-CV-00223-KHR |

## ORDER DENYING MOTION TO COMPEL ARBITRATION AND MOTION TO STAY OR LIMIT DISCOVERY

This matter comes before the Court on Defendants' Motion to Compel Arbitration. [ECF No. 132] and Motion to Stay or Limit Discovery [ECF No. 128]. Defendants argue that Plaintiffs are bound to arbitration because their claims fall within their contracted arbitration provisions. In their related Motion to Stay or Limit Discovery, Defendants ask the Court to stay the case pending certiorari, or to limit discovery to the arbitration issue. Plaintiffs oppose both motions. The Court, being fully advised by the parties' filings and the hearing on August 7th, 2024, denies both of Defendants' Motions.

## BACKGROUND

Plaintiffs sue Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO) and under several state law theories. The Court does not attempt to recite the entire, lengthy factual record. In essence, Plaintiffs hold notes (a type of debt security) in two companies owned by Mr. Bakhmatyuk and affiliated with Nicholas Piazza, Oleksandr Yaramenko, SP Capital Management, LLC, and TNA Corporate Solutions, LLC (collectively "the Piazza Defendants"), and claim that Defendants conspired to devalue those notes. Related to the notes are trust deeds (documents establishing rights and duties of the issuer, surety provider, and trustee), the prospectuses (an offering document that describes the nature of the notes and potential risks involved in note ownership), and the subscription agreements (documents establishing obligations of the joint lead manager (or, the underwriter), as to the marketing and sale of the notes).

Mr. Bakhmatyuk and the Piazza Defendants each separately moved to dismiss. They all claim that because the dispute concerning the notes fell within the arbitration provisions in the trust deeds, the case should be arbitrated. In the same motions, both groups of Defendants argued that the Complaint should be dismissed with prejudice. This Court denied those motions and Defendants appealed under the Federal Arbitration Act ("FAA"). The Tenth Circuit dismissed for lack of jurisdiction, holding that Defendants' motion was not exclusively and explicitly brought under the FAA as is required under § 16(a).[1]

---

[1] The Tenth Circuit also noted the possibility of waiver. *See Gramercy Distressed Opportunity Fund II, L.P. v Piazza*, No's 22-8050, 22-8063, 2023 WL 6296948, at *2 (10th Cir. May 10, 2023) ("[I]f 'the movant in the district court requests a judicial remedy that is inconsistent with the position that the issues involved may be decided only by the arbitrator, the movant is no longer proceeding exclusively under the FAA and has forfeited [its] right to

In the present motion, Defendants again argue that judicial consideration of this case is foreclosed by the arbitration provisions in the Trust Deeds, notes, and other supporting documents. They ask the Court to reconsider its prior holding concerning the availability of equitable estoppel. Plaintiffs respond that there is no arbitration provision in the notes, Trust Deeds, or any other document to which both Plaintiffs and Defendants are bound. Plaintiffs also argue that Defendants waived their right to compel arbitration.

## RELEVANT LAW

A motion to compel arbitration is governed by a summary judgment-like standard. *Hancock v. Ame. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). "The party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement." *Campbell Invs., LLC v. Dickey's Barbecue Rests., Inc.*, 784 F. App'x 627, 634 (10th Cir. 2019). If there is a dispute as to the existence of an agreement to arbitrate, granting the motion is appropriate where "there are no genuine issues of material fact regarding the parties' agreement" while giving "the opposing party the benefit of all reasonable doubts and inferences that may arise." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). If it is clear that no arbitration agreement exists, the court may "decide the arbitration question as a matter of law." *Howard v. Ferellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014).

---

interlocutory review under § 16(a)'") (quoting *Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1386 (10th Cir. 2009)).

**RULING OF THE COURT**

The Court first addresses Defendants' argument that they and Plaintiffs are both party to an arbitration agreement. The Court then addresses whether Defendants waived their right to compel arbitration in their motion to dismiss. The Court will note that a majority of Defendants' arguments are effectively requests for reconsideration, which are "not appropriate to revisit issues already addressed." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Because Defendants do not convincingly show the existence of any circumstances that would cause the Court to reconsider their prior holdings, the Court here primarily refers back to those holdings in disposing of Defendants' claims. The Court then briefly disposes of Defendants' Motion to Stay or Limit Discovery.

**I.     There is no privity of contract between the parties with respect to an arbitration agreement.**

This Court has twice held that the parties did not agree to arbitrate anything among themselves. [ECF No. 67, at 11-18 & ECF No. 97, at 9]. Defendants, together this time, renew their argument that this dispute belongs in arbitration. They contend that even if Plaintiffs are not directly party to the trust deeds, they are party to the notes. This much was held by this Court in a prior order. However, the Defendants now offer affidavits that purport to show that Bakhmatyuk purchased notes, making them party to the notes as well. Defendants argue that because Plaintiffs and Defendants are both noteholders, they are both bound by the arbitration provisions in the notes. But nowhere do they explain why an individual note, which by its express terms binds only the issuer, the surety provider, and a noteholder, would bind an entirely different noteholder to arbitration. In other words,

while Plaintiffs and Bakhmatyuk may be parties to notes generally, they are not bound to the same arbitration provision and clearly did not agree to arbitrate with one another.

At the hearing, Defendants argued that because the notes incorporate the trust deeds and the same trust deed governs all the notes, the parties are bound to the arbitration provision in that trust deed. This Court did hold that Plaintiffs are bound by the arbitration provisions in the trust deed, as those provisions are incorporated in the notes by reference. *See* [ECF No. 97, at 12]. However, the Court also held that the only parties to the trust deeds are those expressly defined as the issuer, the trustee, and the surety provider. The trust deeds create a flow of obligations between each noteholder and those expressly defined parties. They do nothing to establish privity between holders of different notes. Defendants, again, offer *GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC* for the proposition that someone can be a party to an agreement even when they are not signatories. 140 S. Ct. 1637 (2020). The Court has already discussed the irrelevance of *GE Energy* to this case. [ECF No. 97, at 12-14]. The Court will not go through each of Defendants' repeat arguments and explain, for the second or even third time, why they do not hold water.

Defendants' Motion is a patchwork of references to documents that allegedly contain arbitration provisions, seemingly offered in the hopes that from those fragments this Court will piece together an arbitration provision that binds both parties. Holding for Defendants on almost any of their points would either be a reconsideration, the inappropriateness of which was discussed above, or it would effectively nullify the purposes of the motion to dismiss phase. The simple deficiency in Defendant's Motion is

that Gramercy did not agree to arbitrate with Bakhmatyuk or any of the other Defendants. Defendants' continued efforts to rehash the same arguments are unavailing, and the Court will summarily deny any future efforts to do the same.

   *a. Arbitration of arbitrability is not required under the LCIA.*

   As an initial matter, the parties disagree about whether the delegation of arbitrability to an arbitrator means that we are required, under the LCIA, to send this case to arbitration. Defendants cite *Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.* and *Belnap v. Iasis Healthcare* to argue that where the parties have expressly delegated questions concerning the scope of arbitrability to an arbitrator, a court must respect that delegation. 994 F.3d 1181, 1191 (10th Cir. 2021); 844 F.3d 1272, 1281 (10th Cir. 2021). *Goldgroup* did not involve the issue of whether an agreement to arbitrate existed between the parties in the first place and is of little instructive value here. However, this Court has previously referenced *Belnap* in holding that arbitration of arbitrability was not required where a nonsignatory is involved. [ECF No. 97, at 9-10]. In their Motion and at the hearing, Defendants spent much of their time addressing the breadth of the arbitration agreements and cite cases to that effect. But the scope of the arbitration agreement is beside the point if Defendants cannot show that Plaintiffs are actually bound to arbitrate their dispute with Defendants.

   As this Court already held, the issue of whether the parties agreed to be bound to an arbitration provision precedes the application of the LCIA regulations. *See also Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1128 (10th Cir. 2018) (holding that the district court erred in not determining whether parties were subject to arbitration

agreement before sending the case to arbitration). This was the subject of a prior ruling which found that the issue of whether Plaintiffs and Defendants are both parties to an arbitration agreement is a threshold issue that requires resolution before the LCIA regulations apply. [ECF No. 67, at 12].  The Court explained that because "[t]he parties to this case did not agree to arbitrate anything amongst themselves," the Court "does not defer to the contract's agreement to arbitrate arbitrability." *Id.* We see no reason to revise this holding. It is inapposite for a court, when asked by a plaintiff to exercise authority over a dispute, to defer its power to hear the case to an arbitrator before it has determined that an arbitration agreement exists.

>   b. *The new evidence does not alter prior rulings.*

Defendants style their Motion as concerning novel issues because the Court can now consider the prospectuses, subscription agreements, and relationship agreements; which they argue show that the parties are bound to arbitrate their dispute. They contend that the change in posture from a motion to dismiss to a motion to compel arbitration, coupled with Bakhmatyuk's affidavits, makes a significant difference. Specifically, Defendants argue that the prospectuses, the subscription agreements, and the relationship agreements, which the Court was unable to consider at the motion to dismiss phase, incorporate the notes and contain an arbitration provision of their own. Defendants contend that because Plaintiffs' suit arises out of the notes and falls within the arbitration provisions, the Court is required to order arbitration. These arguments are without merit.

As discussed, the affidavits, even if they did prove that Bakhmatyuk owned notes, do nothing to establish privity between the parties. While it is true that the Court's previous

Orders declined to take judicial notice of the supporting documents, it also held that, even if it had, "the subscription agreements, prospectuses, and relationship agreement do not make Bakhmatyuk a party to the notes or the trust deeds" and therefore do not make him "a party…for purposes of the arbitration clauses." [ECF No. 75, at 20]. Here, as there, Defendants did not cite any authority or part of the record that would indicate how being a party to those supporting documents would make them a party to either the trust deeds or the notes. The differing evidentiary standard does little to change this outcome. Even a cursory glance at the subscription agreements reveals that only the issuer, the surety providers, and the joint lead managers are signatories. They do not purport to bind the parties involved in this case to one another. The same is true of the prospectuses.

As for the Piazza Defendants, what evidence there is that Piazza and Yaramenko own notes "through SP Capital Management" cannot change the outcome because this Court has already explained that "it is black-letter American law that corporate entities are legally distinct from their individual owners, officers, and directors." [ECF No. 97, at 14]. SP Capital's alleged ownership of notes alone does nothing to show that any Defendant in this case owns notes. However, even if the brokerage statements did prove that SP Capital owned notes, and even if that ownership were somehow transferred to Piazza and Yaramenko in their personal capacities, their Motion would fail for the same reasons it fails as to Bakhmatyuk.

c. *Equitable estoppel is still unavailable to Defendants.*

Defendants reprise their argument that Plaintiffs should not be able to make claims that allegedly arise under the notes while disclaiming any obligation to arbitrate those claims. This argument appears to be based on equitable estoppel, which this Court already held was unavailable to enforce an agreement against nonsignatories under English law. [ECF No. 97, at 32]. Defendants acknowledge this earlier holding but advise the Court that it "has the discretion to revise that interlocutory order." [ECF No. 132, at 15]. The Court sees no reason to do so. In the hearing, Defendants pointed specifically to the tortious interference claim as being somehow distinct from the other claims in this regard, but tortious interference is a tort claim and Defendants, still, have "not show[n] that English law allows nonsignatories to enforce arbitration clauses when a contract party brings tort claims." [ECF No. 97, at 27]. Further, these claims do not arise out of the notes or trust deeds in the way that Defendants claim because Plaintiffs do not bring contract claims. Accordingly, the Court declines to revisit its holding that equitable estoppel does not apply.

## II.   Defendants waived their right to compel arbitration.

Plaintiffs argue that, even if Plaintiffs and Defendants were both bound by an arbitration agreement, Defendants waived their right to arbitration when they requested merits relief within their motion to dismiss.

The Tenth Circuit, in responding to Defendant's claim that the Motion to Dismiss was presenting arguments in the alternative and therefore should be understood as proceeding exclusively under the FAA, said the following:

> [E]ven when a party pleads in the alternative, there may come a point at which a choice must be made. In particular, a party can waive the right to pursue arbitration by simultaneously pursuing merits relief in the courts. After all, one seeking arbitration is contending that judicial review is inappropriate. To pursue adjudication on the merits by the court is contrary to the purported desire to have the claims resolved by an arbitrator in the first instance. We made this very point in *Conrad*, saying that if "the movant in the district court requests a judicial remedy that is inconsistent with the position that the issues involved may be decided only by the arbitrator, the movant is no longer proceeding exclusively under the FAA and has forfeited [its] right to interlocutory review under § 16(a)" … A defendant should not be permitted to see whether the district court is receptive to its merits arguments before deciding whether to appeal the denial of a request to compel arbitration.

*Gramercy Distressed Opportunity Fund II L.P. v. Piazza*, Nos. 22-8050, 22-8063, 2023 WL 6296948, at *2 (10th Cir. May 10, 2023) (quoting *Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1386 (10th Cir. 2009)). The Tenth Circuit stopped short of explicitly holding that waiver applies here.  This Court does so now.

"[A] party should not be permitted to demand arbitration when it has previously waived its right to arbitrate…where a waiver is 'an intentional relinquishment or abandonment of a known right.'" *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). However, waiver is "hardly limit[ed] to…intentional relinquishment…" and can apply where the movant has negligently waived its right. *Id.* (citing *Reid Burton Const. Inc. v. Carpenters Dist. Council of Southern Colo.*, 614 F.2d 698, 701 (10th Cir. 1980)).

The Tenth Circuit has enumerated several factors to guide courts in finding waiver in the arbitration context:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the

parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464, 467-468 (10th Cir. 1988) (quoting *Reid Burton Constr., Inc.*, 614 F.2d at 702). By demanding arbitration, a party is stating that "the issues involved may only be decided by the arbitrator", a position that is inconsistent with a request for relief on the merits in a court of law. *Conrad*, 585 F.3d at 1386.

Therefore, a motion that "by its nature 'goes to the merits of the case'" is "a conscious decision to have the substance of [that party's] claims decided by a court" and can constitute waiver. *Khan v. Parsons Global Services, Ltd.*, 521 F.3d 421, 427 (D.C. Cir. 2008) (quoting *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 776 (D.C. Cir. 1987). In *Khan*, the Defendant filed a motion styled as a "motion to dismiss or, alternatively, for summary judgment or to compel arbitration." *Id.* at 424. The district court treated the motion as for summary judgment, which it granted. The D.C. Circuit reversed. The defendant then moved to compel arbitration, which the district court granted. The D.C. Circuit again reversed, holding that the defendant had waived their right to compel arbitration by seeking merits relief in its motion for summary judgment. Specifically, the court held that the defendant's affirmative defense that plaintiff's claims fell under worker's compensation addressed the merits of those claims. *Id.*

11

Defendants have filed two Motions to Dismiss under Rule 12(b)(6), each of which contain defenses that go to the merits of Plaintiffs' claims. [ECF Nos. 43 & 75]. Defendants' first motion argued that the lawsuit should be dismissed because Plaintiffs are bound to the "no-action" provisions in the trust deeds. The second motion argued that the Plaintiff's RICO claims are barred by the Private Securities Litigation Reform Act. These are claims for relief on the merits that are independent of the alleged requirement to arbitrate. While *Khan* addressed a motion for summary judgment, which involves a greater investment of time and resources, nothing about its language was necessarily limited to that context. The thrust of the caselaw provides that seeking merits relief is inconsistent with an assertion of the right to arbitrate and applies in the context of a motion to dismiss. Defendants cannot tiptoe the line between an FAA motion and a 12(b)(6) motion and, as the parties put it, "have it both ways." Defendants claim that they are being punished for raising the arbitration issue too early and too often, but this characterization misunderstands the law of waiver. The problem is that Defendants jumped the gun on seeking merits relief. Their waiver of the arbitration issue is no one's fault but their own.

At the hearing, Defendants cited the *Peterson* factors as reflected in *Healy v. Cox Communications, Inc*. to point out that the third factor contemplates that a party might raise the right to arbitrate near in time to trial. 790 F.3d 1112, 1116 (10th Cir. 2015). Defendants presumably mean that a party could "fail" the third factor but avoid a finding of waiver based on the other factors, since raising the right to arbitrate near in time to trial would weigh in favor of waiver. However, it seems a slight distortion to imply that, based on *Healy*, it is *broadly permissible* for a party to raise the arbitration issue close to trial.

Regardless, Defendants' assertion tells us little about whether they have waived the right to arbitrate because it does not consider the other factors. *Healy* is neutral for Defendants' argument, at best.

Many of the remaining *Peterson* factors support finding waiver. The "machinery of litigation" has certainly been invoked, as this litigation has been ongoing since 2021. We have found that Defendants actions are inconsistent with the right to arbitrate because they sought merits relief in both their motions to dismiss. The Court therefore finds that Defendants waived their right to compel arbitration.

## III.   The Court denies the Motion to Stay or Limit Discovery

Defendant's Motion to Stay is based almost entirely on arbitration-related grounds and is mostly rendered moot by this Court's denial of the Motion to Compel Arbitration. The sole remaining issue is the alleged incongruity between the Tenth Circuit's approach to Defendant's FAA appeal under *Conrad v. Phone Directories Co., Inc.* as to 1) Supreme Court precedent and 2) other circuits. Put simply, neither of these grounds are relevant to this Court's decision to grant a stay. The Tenth Circuit's decision binds this Court, and alleged error on their part or the ostensible presence of a circuit split does not vitiate that flow of authority. The authority of appellate courts over trial courts is a bedrock principle of the American legal system, and one that this Court follows today. Defendants' Motion to Stay or Limit Discovery is denied.

CONCLUSION

This Court finds that Defendants failed to show any factual issue as to the existence of an arbitration agreement that binds the parties. This Court further finds that Defendants

have waived their right to compel arbitration. This Court holds that Defendants did not

offer any legitimate basis for why the case should be stayed pending certiorari.

NOW, THEREFORE, IT IS ORDERED Defendants' Motion to Compel Arbitration

is DENIED.

IT IS FURTHER ORDERED Defendants' Motion to Stay or Limit Discovery is

DENIED.


Dated this 26th day of August, 2024.

_____

Kelly H. Rankin
United States District Judge